IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
RICHARD W. NAGEL
CLERK OF COURT

2016 SEP 19 AM 11: 20

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**Kassi Tchankpa**
6675 Winbarr Way
Canal Winchester, OH 43110

   Plaintiff,

v.

**Ascena Retail Group**
8323 Walton Parkway
New Albany, OH 43054

   Defendant.

Case No.: 2 : 1 6 C V 0 8 9 5

Judge: Judge Sargus

Magistrate Judge

MAGISTRATE JUDGE KEMP

## COMPLAINT

### (Jury Demand Endorsed Hereon)

1. The Court has subject matter jurisdiction over this matter pursuant to its federal claims jurisdiction. The federal claims are pursuant to the Americans with Disabilities Act. The Court has jurisdiction over the state law claim pursuant to its pendent claims jurisdiction.

2. The Court has personal jurisdiction, and venue is appropriate in this Court, because the events pertinent to this lawsuit occurred in the Southern District of Ohio, Eastern Division. Further, Plaintiff worked for Defendant in the Southern District of Ohio, Eastern Division.

3. Mr. Tchankpa was employed by Defendant at its New Albany location from March 2011 to December 13, 2013. Defendant is a specialty retail company that sells apparel and accessories to women and girls. Defendant's retail brands include Anne Taylor, Loft, Lane Bryant, Dress Barn, Catherine's, Maurice's, and Justice.

4. Mr. Tchankpa worked for Defendant as a Database Administrator 2. In this position he was responsible for working with database software and application software supporting Defendant's customers nationwide and overseas. Mr. Tchankpa's position was a mid-level IT position. He was earning $105,060 per year when his employment ended.

5. Mr. Tchankpa was very qualified to work for Defendant as a Database Administrator. He had graduated from the University of Missouri with Masters' Degrees in Statistics, Computer Science, and Operations Research. He had nearly twenty years of relevant experience in database administration and computer systems operations when hired by Defendant.

6. Mr. Tchankpa's work performance for Defendant was good. He never received any formal employment discipline. He received two annual appraisals. The first was very positive, with all of the assessments in the various categories of the appraisal at the Fully Meets Job Requirements level or at the Exceeds Job Requirements level. His second review was more mediocre; however, it did not accurately reflect his

2

performance. As detailed below, by the time of the second evaluation he had suffered a shoulder injury that had had substantially limited function in his left shoulder and arm, he had been seeking reasonable accommodations of his medical condition, but Defendant was refusing his reasonable accommodation requests.

7. Mr. Tchankpa injured his left shoulder when moving two large, cumbersome business laptop computers. As part of his job, Mr. Tchankpa was required to lift and carry on a daily basis at least one and frequently two, heavy company provided computer laptops to his home and back to the office. He was required to transport the business laptops so as to be able to work as needed, 24/7, on Defendant's projects and operations in the United States and abroad.

8. On December 21, 2012, Mr. Tchankpa injured himself when lifting two heavy company provided business laptop computers. Specifically, he felt a pop and then sharp pain in his left shoulder. He was later diagnosed with left shoulder sprain/strain, left shoulder adhesive capsulitis, and left shoulder rotator cuff injury. From the date of injury and then throughout 2013, Mr. Tchankpa experienced sharp and debilitating pain in his left shoulder, his left arm, his neck and in his chest. The motion in his left arm and shoulder was very limited. His left arm quickly became quite weak.

9. Despite the injury and the related shoulder and arm limitations, Mr. Tchankpa continued to work for Defendant throughout most all of 2013. He continued to

perform his job well. However, he was in constant pain while working and when driving back and forth to work.

10. From January 2013 through March 2013, Mr. Tchankpa spoke with his Manager, Manish Patel, on several separate occasions about his physical problems and the possibility of him working from home three days per week. The reason for this request is that it would reduce the number of times Mr. Tchankpa would need to lug the laptops back and forth from home to the workplace, it would reduce the time he would spend driving, and it would allow him to take more breaks during the day. Working from home three days per week constitutes a reasonable accommodation because Mr. Tchankpa would still be able to perform the essential functions of his Database Administrator 2 position. In fact, he had regularly worked from home in the evenings and on the weekends throughout his employment so that he could address and fix problems with the computer systems whenever they occurred. It was for this purpose, addressing issues whenever they arose 24/7, that Mr. Tchankpa was required to lug the laptops to and from work. Furthermore, several of his co-workers regularly worked from home.

11. In April, 2013 since Mr. Patel had not authorized Mr. Tchankpa to work from home three days per week, Mr. Tchankpa contacted Jodi Null, the HR Manager responsible for the IT Department, to discuss working from home three days per week as a reasonable accommodation. Mr. Tchankpa met with Ms. Null and explained his medical condition and his need for an accommodation of working three days per week

4

from home. Ms. Null promised to look into the possibility of Mr. Tchankpa working from home, but she never got back to Mr. Tchankpa with an answer even though he followed up with her several times.

12. Because Ms. Null had failed to approve his request for accommodation, starting in mid to late summer 2013, Mr. Tchankpa revisited with Mr. Patel the idea of working from home. Mr. Patel informed Mr. Tchankpa that he would only reconsider the request to work from home if he (Patel) was provided all of Mr. Tchankpa's medical records pertaining to the shoulder condition. Mr. Tchankpa provided Mr. Patel copies of all of the medical records, even though he believed the demand for his confidential medical records was overbroad and illegal. Once again, even though Mr. Tchankpa had supporting medical documentation, Mr. Patel did not approve the reasonable request to work three days per week from home. In fact, Mr. Patel, rather than approving the accommodation request, told Mr. Tchankpa he should rent an apartment in New Albany so he would no longer need to drive 30 miles each way to work.

13. Mr. Tchankpa last met with Mr. Patel in October 2013 on the subject of working three days per week from home. Mr. Tchankpa pointed out that his shoulder condition was getting worse and that several employees on Mr. Patel's team were allowed to work from home. Mr. Tchankpa also asked about being transferred to another department where he could work from home. It made no difference. Mr. Patel stated he was not going to approve, nor would he ever approve, Mr. Tchankpa's request to work from home three days per week, nor would Mr. Tchankpa be allowed to transfer. Mr.

Tchankpa then told Mr. Patel that he would pursue the matter with Human Resources. Mr. Patel became irate, telling Mr. Tchankpa it was his call who gets to work from home, not anyone else's at the company.

14. Shortly after returning to his desk from the meeting with Mr. Patel, Mr. Tchankpa received a phone call from Melissa Lester, the HR Manager for the IT Department. (Ms. Lester had replaced Ms. Null.) Ms. Lester said she needed to speak with Mr. Tchankpa immediately. Mr. Tchankpa went to her office and found Mr. Patel sitting there with her. They discussed Mr. Tchankpa's request to work three days per week from home as well as his request to be transferred to a department where his disability could be accommodated. Ms. Lester indicated that she would not allow Mr. Tchankpa to begin working from home nor would she transfer him, but the matter would be reviewed. She also informed him that if he missed work due to his shoulder injury he would be terminated. Ms. Lester instructed Mr. Tchankpa to have his health care provider complete a Report of Workability and bring it to her. Mr. Tchankpa's health care provider did complete the requested Report of Workability, and it was submitted to Ms. Lester (as well as Ms. Kuhlmeier in the Benefits Department).

15. There was another meeting involving Ms. Lester, Mr. Patel, and Mr. Tchankpa pertaining to the request to work from home three days per week or be transferred to another department. This subsequent meeting also included Dennis Moore, the V.P. of Information Technology. At this follow up meeting, Mr. Moore stated that Mr. Tchankpa would not be permitted to work from home at all and he would not be

transferred. He also said that some of Ascena's customers had complained about Mr. Tchankpa's work. Mr. Tchankpa, who was skeptical that there in fact were any customer complaints, asked which customers had complained. Mr. Moore refused to identify the customers. Mr. Moore instead told Mr. Tchankpa that if he was not happy with his decision (that Mr. Tchankpa could not work from home) then he could quit.

16. Defendant failed and/or refused Mr. Tchankpa's reasonable request for accommodation. Mr. Tchankpa quit his employment with Defendant on December 13, 2013. He quit his employment because Defendant's continuing failure to accommodate his shoulder condition was making his shoulder condition much worse and he was becoming physically unable to continue working. Had he been accommodated appropriately, and had he been able to continue receiving appropriate medical care (explained below), Mr. Tchankpa would have been able to continue working.

17. In addition to failing to accept Mr. Tchankpa's requests for accommodation, Defendant took specific actions that made Mr. Tchankpa unable to continue receiving the needed medical care for his shoulder and related disability condition, which of course made his medical condition worse. After Mr. Tchankpa's shoulder was injured, he immediately sought appropriate medical care. Treatments he received included manipulations, electrical stimulation, physical therapy, and rehabilitation.

7

18.     Mr. Tchankpa's medical treatment was originally paid through Aetna, which is the insurance carrier used by Defendant. However, in May of 2013, Defendant, which is self-insured for workers compensation, unilaterally reassigned all medical care for Mr. Tchankpa's shoulder from Aetna to workers compensation. Defendant informed Mr. Tchankpa that it was switching the claim to workers compensation because his shoulder condition was caused by a workplace injury. Defendant instructed Mr. Tchankpa that he could no longer submit any bills for treatment through Aetna but instead would need to submit all claims for payment through workers compensation.

19.     Immediately after it transferred the shoulder claim from Aetna for the stated reason that the shoulder injury was caused by a workplace injury, Defendant contended the shoulder injury, in fact, was not the result of a workplace injury. Defendant then fought Mr. Tchankpa's efforts to have his medical care provided through workers compensation. On or about October 11, 2013, Ascena, as a self-insured employer, officially rejected Mr. Tchankpa's workers compensation claim, which included refusing to pay for his medical treatments for the shoulder and for his partial disability condition.

20.     As a result of Defendant's decisions, Mr. Tchankpa's medical care providers were not no longer being paid, either by Aetna or by Ascena through workers compensation. Since they were not being paid, Mr. Tchankpa's doctors quickly stopped providing uncompensated care and treatments. As a direct and proximate result of these actions and the failure to accommodate (as averred in detail above) Mr. Tchankpa's

shoulder condition and disability condition became significantly worse, and in December 2013 he could no longer continue working. Mr. Tchankpa has been unable to work since December 2013.

21. Mr. Tchankpa's shoulder condition constitutes a disability, as said term is defined in the ADA. Mr. Tchankpa's request to work three day per week from home or be transferred to a department that could allow him to work some of the week from home were reasonable accommodation requests under the ADA. Defendant failed to reasonably accommodate Mr. Tchankpa's disability. Defendant intentionally discriminated against Mr. Tchankpa. Defendant constructively discharged Mr. Tchankpa.

22. Mr. Tchankpa filed a charge of disability discrimination with the EEOC on or about June 20, 2014. The EEOC issued a right to sue letter to Mr. Tchankpa on July 22, 2016, which was actually mailed out by the EEOC on July 29, 2016 and received by Mr. Tchankpa several days afterwards. (Copy of right to sue letter appended.)

## COUNT I – DISABILITY DISCRIMINATION CLAIM PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

23. Plaintiff reincorporates the allegations contained in Paragraphs 1 through 22 as if fully rewritten verbatim herein.

9

24.    Defendant discriminated against and harassed Plaintiff due to his disability. Defendant failed to reasonably accommodate Plaintiff. Defendant constructively discharged Plaintiff.

25.    Plaintiff states a cause of action for disability discrimination pursuant to the Americans with Disabilities Act.

## COUNT II – DISABILITY DISCRIMINATION CLAIM PURSUANT TO O.R.C. §4112.99

26.    Plaintiff reincorporates the allegations contained in Paragraphs 1 through 24 as if fully rewritten verbatim herein.

27    Plaintiff states a cause of action for disability discrimination pursuant to O.R.C. §4112.99

**WHEREFORE, on Count I,** Plaintiff demands judgment in his favor, an award of lost pay and lost benefits, front pay, appropriate injunctive relief, compensatory damages in the amount of $300,000, liquidated damages equal to all awarded pecuniary and general compensatory damages, attorney's fees, court costs, and interest.

10

**WHEREFORE, on Count II,** Plaintiff demands judgment in his favor, an award of lost pay and lost benefits, front pay, appropriate injunctive relief, compensatory damages in the amount of $300,000, punitive damages in the amount of $300,000, attorney's fees, court costs, and interest.

Respectfully submitted,

William J. O'Malley (0056091)
4591 Indianola Avenue
Columbus, Ohio 43214
Telephone: (614) 262-8360
Facsimile: (614) 262-5732
omalleywj@aol.com

Attorney for Plaintiff

### JURY DEMAND

Plaintiff demands a trial by jury.

William J. O'Malley (0056091)

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Kassi Tchankpa<br>6675 Winnbarr Way<br>Canal Winchester, OH 43110 | From: | Cleveland Field Office<br>EEOC, AJC Fed Bldg<br>1240 E 9th St, Ste 3001<br>Cleveland, OH 44199 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No |
|---|---|---|
| 532-2014-01724 | Sabrina R. Shifman,<br>Investigator | (216) 522-7680 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Cheryl Mabry-Thomas*     JUN 2 2 2015

Cheryl Mabry-Thomas,<br>Director     *(Date Mailed)*

Enclosures(s)

cc: Brooke E. Niedecken, Attorney at Law<br>
Littler Mendelson, PC<br>
21 East State Street<br>
16th Floor<br>
Columbus, OH 43215