# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: March 06, 2020

Mr. Michael W. DeWitt
Biller & Kimble
4200 Regent Street, Suite 200
Columbus, OH 43219

Mr. Benjamin Warfield Mounts
Ms. Brooke Elizabeth Niedecken
Littler Mendelson
21 E. State Street, Suite 1600
Columbus, OH 43215

Re: Case No. 19-3291, *Kassi Tchankpa v. Ascena Retail Group, Inc.*
Originating Case No. : 2:16-cv-00895

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0074p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

| | | |
|---|---|---|
| KASSI TCHANKPA, | | |
| | *Plaintiff-Appellant*, | |
| *v.* | | No. 19-3291 |
| ASCENA RETAIL GROUP, INC., | | |
| | *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-00895—Edmund A. Sargus, Jr., District Judge.

Argued: December 10, 2019

Decided and Filed: March 6, 2020

Before: SUTTON, NALBANDIAN, and READLER, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Michael W. DeWitt, DEWITT LAW, LLC, Columbus, Ohio, for Appellant. Brooke E. Niedecken, LITTLER MENDELSON, P.C., Columbus, Ohio, for Appellee. **ON BRIEF:** Michael W. DeWitt, DEWITT LAW, LLC, Columbus, Ohio, for Appellant. Brooke E. Niedecken, Benjamin W. Mounts, LITTLER MENDELSON, P.C., Columbus, Ohio, for Appellee.

---

**OPINION**

---

NALBANDIAN, Circuit Judge. Kassi Tchankpa suffered a serious shoulder injury while employed by Ascena Retail Group, Inc. (Ascena). Neither party challenges this. The dispute stems from Ascena's treatment of Tchankpa after the injury. Despite having resigned from his

No. 19-3291  *Tchankpa v. Ascena Retail Group, Inc.*  Page 2

position, Tchankpa contends that Ascena violated the Americans with Disabilities Act (ADA) by not accommodating his injury and constructively discharging him.

Tchankpa's claim centers on his request for a work-from-home accommodation. He argues that Ascena failed to accommodate his disability by not allowing him to work from home three days per week. But employees cannot mandate an accommodation. And an employer may request medical records supporting the employee's requested accommodation. Thus Ascena had every right to ask Tchankpa for medical documentation linking his injured shoulder and his work-from-home request. After finally providing a doctor's note, Tchankpa resigned before Ascena fully responded. Yet even that document did not specify that Tchankpa needed to work from home.

The ADA is not a weapon that employees can wield to pressure employers into granting unnecessary accommodations or reconfiguring their business operations. Instead, it protects disabled employees from disability-related mistreatment—no more, no less. This means Tchankpa must not only show that Ascena wronged him, but also that the alleged offense related to his injured shoulder. Because he cannot do so, Tchankpa's ADA claims fall short. We AFFIRM.

I.

Tchankpa began working for Ascena as a contractor in 2011. He started as a database manager, providing 24-7 database support. Then he became a full-time employee in mid-2013. Ascena required him to carry laptops to and from the office because database support personnel were often on call during non-business hours.

Tchankpa claims he injured his shoulder while transporting these laptops in December 2012. But he sought medical treatment for shoulder pain in October 2012. And Tchankpa did not immediately report the incident as a workplace injury, waiting until May 2013 to do so.

In any event, Tchankpa's shoulder injury impeded daily activities. He could not bathe himself easily, cook, wash dishes, open the refrigerator, or drive normally. So Tchankpa sought various medical treatments from multiple healthcare providers. He received many diagnoses,

including: left shoulder sprain/strain, left shoulder adhesive capsulitis, left rotator cuff syndrome, pain in the left shoulder joint, cervical sprain and/or pain, left shoulder bursitis/tendonitis, arthrofibrosis left shoulder, and subacromial impingement left shoulder.  (R. 71-6, Med. Rs., Page ID # 1841.)  Tchankpa underwent treatment for shoulder pain until at least 2017.

Despite this extensive medical attention, Tchankpa did not receive a medical opinion on his ability to work while injured until October 2013.  This came after repeated requests from Manish Patel, Tchankpa's supervisor.  Patel asked for medical proof that Tchankpa had a restriction requiring accommodation.  In the meantime, Patel allowed Tchankpa to arrive late or leave early as needed to attend medical appointments.  Using a combination of paid time off and flexible scheduling, Tchankpa received medical treatment and met his hours requirement at Ascena.  But from early 2013 onwards, Patel had made clear that Tchankpa needed medical documentation to regularly work from home.

This arrangement did not last.  Tchankpa demanded a new schedule permitting him to work from home three days per week.  So Patel asked for medical documentation supporting that accommodation.  Tchankpa eventually provided documentation from Dr. Ronald Stacy II, his physician.  That report confirmed Tchankpa's injury, but stated that he could perform his job so long as he could take intermittent breaks.  This came after Ascena mailed a request to Dr. Stacy to verify that Tchankpa needed an accommodation for his injured shoulder.  Dr. Stacy's report also stated that Tchankpa could not lift more than ten pounds.  But an earlier report from Dr. Stacy did not conclude that lifting, or driving, could aggravate Tchankpa's condition.  In any event, Tchankpa did not provide documentation outlining his medical restrictions until October 17, 2013.  And no documentation explained why Tchankpa needed to work from home.

Until this point, neither Patel nor any other Ascena employee approved Tchankpa's work-from-home request.  In October 2013, Tchankpa again brought this request to Patel.  And Patel confirmed that he would not reconsider granting three days of remote work per week.  This came after a ten-month period where Tchankpa allegedly sought work-from-home accommodations.

Challenging Patel's decision, Tchankpa observed that Ascena permitted other employees to work from home. In response, Patel told Tchankpa that his decision to accommodate other employees, but not Tchankpa, had nothing to do with Tchankpa's injury. Then the conversation turned tense. It ended with Patel threatening to call security if Tchankpa would not accept his decision. Tchankpa alleges that his boss, Dennis Moore, told him the next day that he could neither transfer to another position nor work from home three times per week. Moore also reminded Tchankpa that he could quit if he was unhappy with his job. Only after these October meetings did Tchankpa report workplace harassment and disability discrimination. But email exchanges from late October tell a different story, with Tchankpa emailing Ascena employees about a plan for taking time off.

This dialogue between Tchankpa and Ascena regarding time off never came to a resolution. That's because Tchankpa never requested a leave of absence. Instead, he submitted a resignation letter. This letter complained that Ascena failed to provide Tchankpa ample professional training or appreciate his work. Even after Tchankpa gave his two-weeks' notice, Ascena followed up on his potential leave of absence. All in all, Tchankpa left his job voluntarily and then sued Ascena in September 2016.

Tchankpa's amended complaint contained three types of claims: disability discrimination under the ADA, disability discrimination under Ohio Rev. Code Ann. § 4112.99, and various tort claims. But the district court chose not to exercise its supplemental jurisdiction over the state-law claims. After discovery, the parties both moved for summary judgment on the ADA claims. The district court granted Ascena's motion for summary judgment on all claims and denied Tchankpa's motion for partial summary judgment. Following that decision, Tchankpa filed a notice of appeal.

II.

We review grants of summary judgment de novo. *Miles v. S. Cent. Human Res. Agency*, 946 F.3d 883, 887 (6th Cir. 2020). And we affirm summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As for denials of Rule 59(e) motions to alter or amend, we ask if the

lower court abused its discretion. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 518 (6th Cir. 1998). But denials of Rule 59(e) motions based on legal error receive de novo review. *Id.*

### III.

The ADA states, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). And an employer's failure to grant a reasonable accommodation to a disabled employee falls under the ADA's definition of discrimination. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Under *Kleiber*, we apply the direct evidence test to resolve failure to accommodate claims. 485 F.3d at 868 ("[C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence . . . of discrimination."); *see also Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) ("But ADA discrimination 'claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination'; the familiar *McDonnell-Douglas* burden-shifting framework . . . therefore does not apply.") (quoting *Kleiber*, 485 F.3d at 868–69). That's because if we accept the employee's factual statement, as we must under the summary judgment standard, then "no inference is necessary to conclude that the employee has proven [a failure to accommodate]." *Kleiber*, 485 F.3d at 868.

The direct evidence test does not rely on the *McDonnell Douglas* burden-shifting framework. *Id.* at 869. Instead, this Circuit uses a multi-part test to evaluate reasonable accommodation claims:

> (1) The plaintiff bears the burden of establishing that he or she is disabled.
> (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.
> (3) The employer will bear the burden of proving that a challenged job criterion is

No. 19-3291 *Tchankpa v. Ascena Retail Group, Inc.* Page 6

> essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)). Plaintiffs must also propose a reasonable accommodation to succeed. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725–26 (6th Cir. 2000) ("The burden of establishing that the proposed accommodation is reasonable remains with the plaintiff, regardless of whether plaintiff has direct or indirect evidence in support of his or her ADA claim.").

To begin, the parties contend that the district court used the wrong reasonable accommodation framework. Tchankpa argues that the lower court erred by using *McDonnell Douglas* burden shifting, which applies in indirect evidence cases. And Ascena believes that the district court correctly dismissed Tchankpa's claim under the indirect evidence standard. So neither party suggests that the lower court correctly used the direct evidence test. This misses the mark because the lower court rightly rejected the indirect evidence test and the accompanying *McDonnell Douglas* burden shifting. (R. 84, Op. and Order, Page ID # 2427 ("[T]here is no need for [the] court to utilize the *McDonnell Douglas* burden-shifting formula[.]")) So it did not err in choosing a standard.

In any event, Tchankpa tells us that he was disabled, otherwise qualified for his position, and requested an accommodation from Ascena. Although those are necessary elements under the direct evidence test, Tchankpa omits a key requirement: proposing a *reasonable* accommodation. And requested accommodations are reasonable only if they "address a key obstacle preventing [the employee] from performing a necessary function of [his job.]" *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). So a disabled employee cannot ask to work from home for convenience and then sue under the ADA if that request is denied.

Employers also bear responsibilities when receiving a requested accommodation. They must consider: "(1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee." *Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir. 1998) (citing

29 C.F.R. pt. 1630, App. § 1630.9 (1997)). Along with these factors, an accommodation is likely unreasonable if it frustrates attendance or creates "an unlimited ability to leave work[.]" *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 528 (6th Cir. 2015). Finally, the employee and employer must engage in "an informal, interactive process" to negotiate an accommodation that allows the disabled employee to work despite his limitations. *Id.* at 529 (citing 29 C.F.R. § 1630.2(o)(3)).

During this process, the disabled employee's requested accommodation does not bind his employer. For instance, employers may require documentation supporting an employee's requested accommodation. *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000) (citing 29 C.F.R. pt. 1630, App. § 160.14(c)). In *Kennedy*, the employer made "numerous attempts to acquire medical documentation [describing its employee's condition] and [the employee] persistently refused to cooperate." *Id.* And the court ruled that the employer had a right to assess its employee's medical condition before greenlighting a proposed break schedule. *Id.* It follows that an employee's failure to provide requested medical documentation supporting an accommodation precludes a failure to accommodate claim. Even more, employers need not immediately implement or accept accommodations proposed by an employee. *See Gerton v. Verizon S. Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005). So a delay in providing a reasonable accommodation is not always actionable. *Id.* ("We have held that an employee cannot base a disability discrimination claim upon an employer's delay in providing a requested accommodation where the delay is due to internal processing or to events outside the employer's control.").

Tchankpa now argues that the district court erred by finding his requested work-from-home accommodation unreasonable. He disagrees with its statement that requested accommodations must be medically necessary or else they cannot be reasonable. Below, the district court relied on *Nance v. Goodyear Tire and Rubber Co.*, 527 F.3d 539 (6th Cir. 2008), for the proposition that proposed accommodations must be "medically necessary." (R. 84, Op. and Order, Page ID # 2427–28 ("On this record, the Court cannot conclude that working from home was a medically necessary accommodation[.]")) Tchankpa correctly observes that the precise phrase "medically necessary" doesn't appear in *Nance* (or any other binding authority on

this issue). But *Nance* says something similar: Accommodations must be "necessary" considering the employee's "physical limitations." *Id.* at 557. And it's hard to imagine a physically necessary accommodation that isn't medically necessary. Thankfully we need not attempt that exercise. That's because Ascena requested medical documentation tying Tchankpa's work-from-home request to his injured shoulder. As a result, Tchankpa needed to provide that documentation. An employee might not always need to show his accommodation is medically necessary to win a failure to accommodate claim. But he must do so when asked by his employer. *See Kennedy*, 215 F.3d at 656.

In short, Tchankpa bore two burdens: He needed to (1) show his work-from-home request was reasonable and (2) provide Ascena with medical documentation supporting the accommodation's necessity. He did neither. Although Tchankpa provided Ascena proof of his injury, that document didn't touch upon Tchankpa's inability to perform the job. If anything, Dr. Stacy's report *confirmed* that Tchankpa could do his job without working from home. Tchankpa claimed that he wanted to work from home because his injured shoulder made driving painful. But he never explained why working from home only three days per week would help him perform his job while injured. Now he tells us that he sought to avoid transporting heavy laptops by requesting a work-from-home accommodation. But that's not the reason he gave to Ascena. And employees cannot justify accommodations for the first time during litigation, let alone on appeal. *See Melange v. City of Center Line*, 482 F. App'x 81, 86 (6th Cir. 2012).

What's more, Tchankpa did not give a satisfactory response to Ascena's request for medical documentation. Under *Kennedy*, employers are entitled to medical documentation confirming the employee's disability and need for accommodation. 215 F.3d at 656. And Ascena invoked that right in early 2013. Yet Ascena did not receive documents discussing Tchankpa's medical restrictions until October 2013. Far from showing a necessary accommodation, Dr. Stacy's report stated that Tchankpa could work eight hours per day, five days per week. Without medical documentation showing that Tchankpa's disability required work from home, Ascena had no duty to grant Tchankpa's request. After all, we presume on-site attendance is an essential job requirement. *See E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761–62 (6th Cir. 2015) (en banc). We also note that Tchankpa resigned before completing

negotiations over his accommodation. That matters because failure to engage in such negotiations undermines failure to accommodate claims. *See Kleiber*, 485 F.3d at 871.

In sum, Tchankpa (1) failed to show that working from home related to his disability; (2) never provided satisfactory documentation to Ascena; and (3) resigned before the parties agreed on Tchankpa's ultimate accommodation. Each shortcoming provides grounds to deny his claim. So we uphold the district court's ruling that Ascena did not fail to accommodate Tchankpa under the ADA.

IV.

Independent of his failure to accommodate claim, Tchankpa asserts that Ascena violated the ADA by constructively discharging him. A constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). To succeed, an employee must also show that the employer intended to oust him. *Id.* In other words, the employer must have created an objectively intolerable work environment to deliberately force a disabled employee to resign. *See Agnew v. BASF Corp.*, 286 F.3d 307, 309–10 (6th Cir. 2002). Otherwise the employer did not commit constructive discharge.

Tchankpa's constructive discharge claim stumbles out of the gate. His primary contention is that the district court erred by not following *Green v. Brennan*, 136 S. Ct. 1769 (2016). He argues that *Green* eliminated the discriminatory intent element of constructive discharge. So that would mean he need only show that Ascena fostered an objectively intolerable workplace. But Tchankpa raises this argument for the first time on appeal. Even worse, he argued the opposite below. This post-trial shift implicates the invitation of error doctrine. Invitation of error means a party cannot allege that the district court erred if the party first asked the district court to commit that error. *See Harvis v. Roadway Exp., Inc.*, 923 F.2d 59, 60 (6th Cir. 1991) ("The doctrine of 'invited error' refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party

to commit."). Here, the district court used the subjective intent prong—exactly what Tchankpa asked it to do. So his constructive discharge claim stalls on procedural grounds.

Whether he invited the error or not, Tchankpa still would need to show that Ascena provided an objectively intolerable workplace. Even if he's correct that *Green* eliminates the subjective intent prong, he cannot prevail unless Ascena provided deficient working conditions. This analysis tends to be fact-dependent and varies from case to case. *Talley*, 542 F.3d at 1107. But intolerability is a demanding standard. For instance, we have said that demotion, reduction in salary, badgering, harassment, humiliation, and sexual assault suggest an objectively intolerable workplace. *See, e.g.*, *Agnew*, 286 F.3d at 310; *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 420 (6th Cir. 2015).

Yet criticism and negative feedback do not suffice, especially when contained to a few isolated incidents. *See Agnew*, 286 F.3d at 310; *Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 707 (6th Cir. 2012). And an employee's subjective discontent does not create an ADA claim. *See Savage v. Gee*, 665 F.3d 732, 739–40 (6th Cir. 2012) (rejecting a constructive discharge claim stemming from an employee's negative response to criticism). As Milton put it, "The mind is its own place, and in itself / Can make a Heav'n of Hell, a Hell of Heav'n." JOHN MILTON, PARADISE LOST 9 (John Leonard ed., Penguin Books 2000) (1667). Our job is to confirm that the plaintiff's work conditions were indeed hellish, or at least close to it.

Tchankpa offers many examples of how he faced a substandard workplace. These include Ascena (1) forcing him to lift heavy laptops despite his shoulder injury; (2) denying his work-from-home request; (3) threatening to fire him; (4) giving other employees preferential treatment; and (5) giving him unwarranted negative feedback. None of these are objectively intolerable.

First, receiving negative feedback without consequence does not implicate the ADA. After all, Tchankpa resigned without receiving formal punishment from Ascena. So nothing serious came from Ascena criticizing Tchankpa. Second, as mentioned above, Tchankpa never linked his physical restrictions to transporting laptops before litigation. And he worked for

almost a year under those requirements but didn't mention transporting the laptops in his resignation letter. What's more, Ascena gave Tchankpa flexible hours to seek treatment for his shoulder. Even Tchankpa's resignation letter airs no grievances relating to his physical limitations—he mostly complains that Ascena didn't appreciate him or invest in him enough. All said, Ascena did not create an objectively intolerable workplace.

That leaves us with the alleged termination threat. Ascena allegedly told Tchankpa that it might fire him if he violated its time off policy by seeking treatments during work hours. And when Tchankpa insisted on working from home three days per week, Ascena reminded him that he could quit if he didn't like his job's requirements. So he argues that these facts show Ascena pressured him to leave. But Ascena only insisted that Tchankpa accept its denial of his work-from-home request. As shown above, Ascena permissibly denied Tchankpa's proposed accommodation. So even forcefully reiterating this lawful denial is not a threatened termination. Facing repeated prodding from its employee, Ascena eventually put its foot down to enforce its decision. Thus we cannot conclude that, as for Tchankpa's termination, "the handwriting was on the wall and the axe was about to fall." *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) (quoting *E.E.O.C. v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)). Without the immediate or credible threat of adverse action, Ascena's comments about Tchankpa leaving his job did not create an objectively intolerable workplace.

Yet Tchankpa's constructive discharge argument raises a colorable point. Indeed, he may be right that *Green* controls and overrules this Circuit's precedent. We have only cited *Green* in a few cases. And none grapples with whether the Supreme Court eliminated the subjective intent prong for ADA constructive discharge.[1] But a controlling Supreme Court case trumps our precedent, even if we published conflicting opinions after the Supreme Court decision. *See Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016) ("[A]n intervening Supreme Court decision gives us the right to revisit [questions] . . . even in the unusual situation where binding circuit precedent overlooked earlier Supreme Court authority."). This matters

---

[1] *See Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 830 (6th Cir. 2019); *Hobson v. Mattis*, No. 18-5306, 2018 WL 7890771, at *3 (6th Cir. Nov. 8, 2018); *Hurst v. Dep't of Veterans Affairs*, No. 18-3185, 2018 WL 4178851, at *1 (6th Cir. July 19, 2018); *Gosbin v. Jefferson*, 725 F. App'x 377, 387 (6th Cir. 2018); *Kelly Servs. Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 868 (6th Cir. 2017).

No. 19-3291 *Tchankpa v. Ascena Retail Group, Inc.* Page 12

because the language in *Green* appears hostile to the subjective intent requirement for constructive discharge claims. In *Green*, the Supreme Court remarked:

> This sometimes-a-claim-sometimes-not theory of constructive discharge is novel and contrary to the constructive discharge doctrine. The whole point of allowing an employee to claim "constructive" discharge is that in circumstances of discrimination so intolerable that a reasonable person would resign, we treat the employee's resignation as though the employer actually fired him. . . . We do not also require an employee to come forward with proof—proof that would often be difficult to allege plausibly—that not only was the discrimination so bad that he had to quit, but also that his quitting was his employer's plan all along.

*Green*, 136 S. Ct. 1779–80 (internal citation omitted). That statement arguably conflicts with the subjective intent requirement still used by this Circuit. So *Green*'s importance is a live issue—just not for Tchankpa.

This is not to say that Tchankpa would win under *Green* simply by showing an objectively intolerable workplace. Even under *Green*, it cannot be the case that objectively intolerable conditions faced by all workers would give rise to an ADA claim. In other words, disabled employees could not recover under *Green* because they quit over conditions equally offensive to both disabled and able-bodied employees. We know that because *Green* focuses on "circumstances of discrimination" and whether "the discrimination [was] bad," and not on general circumstances of the workplace. *Id.* at 1780. So *Green*, even if it eliminates our current subjective intent requirement, does not permit a constructive discharge ADA claim just because a disabled employee suffers an objectively intolerable workplace. Employees invoking *Green* would still need to show a nexus between their disability and the intolerable workplace, even if they need not show that the employer created the substandard workplace with the intent to oust that employee.

As a result, we decline to answer this question of first impression. Tchankpa might have prevailed if he suffered an objectively intolerable workplace in discriminatory circumstances and did not invite the error below. That's because the Fourth Circuit found that *Green* eliminated the subjective intent requirement for constructive discharge. *E.E.O.C. v. Consol Energy Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) ("[T]he Supreme Court revisited the standard for constructive discharge in [*Green*] and expressly rejected a 'deliberateness' or intent requirement[.]"). Yet it's

unclear whether the pertinent language in *Green* applies to the substantive elements of constructive discharge rather than clarifying when the clock starts for statute of limitations purposes. *See Green*, 136 S. Ct. at 1779 (framing its analysis "for purposes of the limitations period"). Also unclear is whether the language in *Green* is dicta or a binding holding.[2] After all, it would be strange for the Supreme Court to reconfigure the constructive discharge test without directly telling us. But judges are not law professors who delight in pondering the hypothetical. So we reject Tchankpa's constructive discharge claim without deciding the *Green* question.[3]

V.

Tchankpa brings other ADA claims. These include: retaliation; unlawful medical inquiry; hostile work environment; and disparate treatment. The lower court dismissed them all. And for good reason—they don't appear in Tchankpa's complaint.

Plaintiffs cannot raise new claims on appeal. And they cannot assert new claims in response to summary judgment. Ultimately the plaintiff's amended complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007)). And conclusory allegations without specific facts do not suffice. *Id.* In sum, the complaint must contain "'a short and plain statement of the claim' that will give defendant fair notice of what the

---

[2]We are mindful that "[t]he only operative portion of a Supreme Court opinion comes with the conclusion on its final page." Josh Blackman, *The Irrepressible Myth of* Cooper v. Aaron, 107 GEO. L.J. 1135, 1196 (2019). Yet this court also finds itself "obligated to follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *United States v. Khami*, 362 F. App'x 501, 508 (6th Cir. 2010) (quoting *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002)). But *Green* may be inapt—its rationale centers on when courts should "[s]tart the limitations clock[.]" *Green*, 136 S. Ct. at 1778. So attempting to follow the dicta in *Green* about subjective intent would just be shooting in the dark. That said, it's hard to read *Green* without detecting hostility towards the intent element of constructive discharge.

In brief, we face the Scylla of altering our constructive discharge test with scant guidance and the Charybdis of neglecting Supreme Court dicta. It follows that the wisest course is not to needlessly sail into dangerous waters.

[3]Even in the Fourth Circuit, which used *Green* to jettison the subjective intent element of constructive discharge, plaintiffs must show they resigned "as a result of [their employer's] discriminatory conduct[.]" *Consol Energy*, 860 F.3d at 144. They just don't have to prove that their employer took deliberate steps to trigger a resignation. No matter what, employees need to show that the offending workplace is somehow discriminatory. And Tchankpa fails to do so.

No. 19-3291 *Tchankpa v. Ascena Retail Group, Inc.* Page 14

plaintiff's claim is and the grounds upon which it rests." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). This is a problem for Tchankpa because his complaint omits his assorted ADA claims. While he points to paragraphs 12, 13, 27, and 28 of his complaint for support, Tchankpa did not preserve these ADA claims for appeal.

First, paragraph 12 only states that Tchankpa "believed [Ascena's] demand for his confidential medical records was overbroad and illegal." (R. 22, Am. Compl., Page ID # 116.) Recounting Tchankpa's belief that the records demand was illegal differs from arguing it was indeed illegal. Next, paragraph 28 reads: "Plaintiff states a cause of action for disability discrimination pursuant to the Americans with Disabilities Act." (*Id.* at 122.) That's all Tchankpa gives to support his retaliation claim. Such a bare allegation does not state a claim. *See Bickerstaff*, 830 F.3d at 396. Third, paragraph 27 houses Tchankpa's constructive discharge and failure to accommodate claims. But he wants us to read a hostile work environment claim into that paragraph because he used the word "harassment." But paragraph 27 does not tie the harassment to Tchankpa's work performance or state how Ascena failed to take corrective measures. So his complaint omits necessary elements of a hostile work environment claim. *See Trepka v. Bd. of Educ.*, 28 F. App'x 455, 460–61 (6th Cir. 2002). Thus, the complaint doesn't contain that claim either.

That leaves only paragraph 13, in which Tchankpa grounds his disparate treatment claim. There, he stated that "several employees on Mr. Patel's team were allowed to work from home" but Tchankpa was not. (R. 22, Am. Compl., Page ID # 116.) But disparate treatment arises from employers "treat[ing] some people less favorably because of their . . . [protected characteristics]." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). And those claims require "a plaintiff [to] show proof of intentional discrimination." *Anderson v. City of Blue Ash*, 798 F.3d 338, 363–64 (6th Cir. 2015) (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012)). That means Tchankpa must show Ascena treated him differently with a discriminatory animus stemming from Tchankpa's disability. *Id.* at 357. Nothing in the complaint establishes disparate treatment based on disability. So Tchankpa loses on that theory too.

No. 19-3291   *Tchankpa v. Ascena Retail Group, Inc.*   Page 15

Finally, Tchankpa alleges that the district court incorrectly denied his Rule 59 motion. That motion claimed the district court erred by applying the indirect evidence test. But the lower court openly stated the indirect evidence test did not apply. (R. 84, Op. and Order, Page ID # 2427 (asserting this case "necessarily involve[d] direct evidence.")) As the court below noted in denying this motion, it "did, in fact, utilize the direct evidence test." (R. 93, Order Den. Pl.'s Mot., Page ID # 2472.) In short, Tchankpa identifies no error to overturn. So this claim, like the others, fails.

VI.

Tchankpa makes many arguments. But none succeed. The ADA shields disabled employees from discrimination—it does not permit carte blanche litigation. And Tchankpa is not guiltless in his conflict with Ascena. For instance, he never gave Ascena its requested medical documentation and even now cannot explain why his injury required working from home three days per week. What's more, Ascena sought to accommodate Tchankpa by providing flexible hours or a leave of absence. But Tchankpa insisted on his preferred accommodation. In short, normal workplace bumps and bruises, such as negative reviews, strict policies, and heated arguments, do not make employers liable for an employee's decision to resign. So we AFFIRM.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-3291

KASSI TCHANKPA,

    Plaintiff - Appellant,

v.

ASCENA RETAIL GROUP, INC.,

    Defendant - Appellee.

**FILED**
Mar 06, 2020
DEBORAH S. HUNT, Clerk

Before:  SUTTON, NALBANDIAN, and READLER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk